UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GWG MCA CAPITAL, INC.,

                               Plaintiff,                   **MEMORANDUM
AND ORDER**

  -against-                                 17-cv-1724 (SIL)

NULOOK CAPITAL, LLC, JOEL NAZARENO,
JOHN GUZZETTI, ANTHONY MANNINO, H.
RUSSELL   HEISER,   and   HEISER
ENTERPRISES, LLC,

                               Defendants.
------------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this civil racketeering and fraud action is Defendant/Counterclaim-Plaintiff Joel Nazareno's ("Counterclaimant" or "Nazareno") motion for default judgment against Plaintiff/Counterclaim-Defendant GWG MCA Capital, Inc. ("Plaintiff" or "GWG") pursuant to Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Motion for Default Judgment, ("Nazareno's Motion" or "Nazareno Mot."), Docket Entry ("DE") [337]. For the reasons set forth below, Nazareno's Motion is denied, and his counterclaims are dismissed with prejudice.

## I.    BACKGROUND

Unless otherwise indicated, the following facts are taken from Nazareno's counterclaims, *see* Answer and Counterclaims ("Counterclaim"), DE [276], as well as the memorandum of law, affidavits and exhibits submitted in support of Nazareno's Motion and are accepted as true for the purposes of the present motion. As the

parties' familiarity with the extensive factual and procedural history of this litigation is presumed, the Court sets forth only background material that is directly relevant to the instant motion.

### A. Proposed Sale of PSC

Counterclaimant – a New York resident – was the founder and Executive Director of Defendant International Professional Services, Inc. ("PSC"), a corporation with offices in Hauppauge, New York. Affidavit of Joel Nazareno ("Nazareno Aff."), DE [337-1], ¶ 11; Counterclaim ¶ 5; Nazareno Mot., Ex. E, Deposition Transcript of Joel Nazareno ("Nazareno Tr."), 23:8-24:9. In Spring 2016, Nazareno began negotiating to sell PSC to Eyal Levy ("Levy"). Nazareno Aff. ¶¶ 11-12; Counterclaim ¶ 293. According to Levy, he was interested in purchasing PSC because "[t]he technology it had was truly brilliant and way ahead of its time." Nazareno Mot., Ex. F, Affidavit of Eyal Levy ("Levy Aff."), DE [337-7], ¶ 4. Levy traveled to Israel during the latter part of 2016, and upon his return, Counterclaimant and Levy resumed their negotiations in January and February 2017. *See* Nazareno Aff. ¶ 12. On March 29, 2017, Nazareno received a proposed written agreement from Levy regarding this potential transaction. *See id.* ¶¶ 13-14; Nazareno Mot., Ex. D, 4-9 (email correspondence between Nazareno and Levy attaching written proposal).

Under Levy's proposal, Levy and two other investors would be granted the option to buy eighty percent of PSC's shares over four years, for a total price of $8 million. Nazareno Mot., Ex. D, 7; *see* Nazareno Tr., 99:15-16 ("[Levy] was purchasing the PSC in 2016, for $8 million."). In the Counterclaim, however, Nazareno alleges

that the proposed purchase price was $8,700,000.00.  *See* Counterclaim ¶ 293.  Counterclaimant further asserts that – as a fifty percent shareholder of PSC – he would have earned $4,350,000 from the sale.  *Id.* ¶ 15; Counterclaim ¶ 294.

### B.  GWG's RICO Claims against PSC and Nazareno

On March 28, 2017, GWG filed an action in this Court against Nazareno, PSC, and PSC's financing division, PSC Financial, as well as Defendants Nulook Capital LLC ("Nulook"), Anthony Mannino ("Mannino"), and Robert Aurigema ("Aurigema"), alleging federal law claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (c)-(d) and various related state law causes of action.  Complaint, DE [1].  Levy requested copies of the pleadings as part of his due diligence in connection with his potential purchase of PSC.  *See* Counterclaim ¶ 301.  At an unspecified time after the initial complaint was filed, Levy was contacted by Plaintiff's counsel by email regarding his relationship with PSC.  *See* Levy Aff. ¶ 14.  Ultimately, when Levy learned of the nature of this litigation, he withdrew his offer to purchase PSC, although the Counterclaim does not indicate when this occurred.  *See* Nazareno Aff. ¶ 18; Counterclaim ¶ 298.  According to Levy, although he knew "what happened with GWG had nothing to do with PSC," he concluded that the purchase "would be a nightmare" now that the litigation had commenced.  Levy Aff.  ¶¶ 18, 20.

On April 26, 2017, Judge Arthur D. Spatt – then assigned to this action – appointed a receiver for PSC (the "Receiver").  *See* DE 38.[1]  Counterclaimant alleges

---

[1] Judge Spatt presided over this action until April 25, 2018, when it was reassigned to Judge Joan M. Azrack.  *See* DE [199].  On September 24, 2018, the action was assigned to then-Magistrate Judge

that shortly thereafter, Plaintiff learned of the negotiations between Levy and Nazareno because the Receiver provided information found in Nazareno's office at PSC to GWG. *See* Nazareno Aff. ¶ 19.[2]

Plaintiff later filed a First Amended Complaint, Second Amended Complaint and Third Amended Complaint, each of which asserted RICO claims against Nazareno, but dropped all claims against PSC and PSC Financial. *See* DEs [114], [240], [257]. Following several motions to dismiss, GWG's RICO claims against Nazareno were dismissed with prejudice. *See* DE [272].

### C. **Nazareno's Counterclaim**

Plaintiff filed its Fourth Amended Complaint on July 28, 2020. *See* DE [273]. On September 20, 2020, Nazareno answered the Fourth Amended Complaint and asserted counterclaims against GWG for: (1) malicious abuse of process and (2) tortious interference with contract/business relations. *See* Counterclaim ¶¶ 281-304. Upon filing the present motion, Counterclaimant abandoned his malicious abuse of process claim. *See* Nazareno Aff. ¶ 4; Memorandum of Law in Support of Nazareno's Motion ("Nazareno Mem."), DE [337-11], 1.

With respect to his tortious interference counterclaim, Nazareno alleges that by filing this action, Plaintiff intentionally interfered with his relationship with Levy, both as to the potential sale of PSC and other future business dealings. *See*

---

Gary Brown, pursuant to the parties' consent. *See* DE [216]. This case was reassigned to this Court on January 17, 2020. *See* Order dated Jan. 17, 2020.

[2] Nazareno further asserts that at his deposition, GWG's counsel and the Receiver's counsel used exhibits that they "only could have obtained from PSC's offices and computers," given that Nazareno had not yet provided any written discovery to Plaintiff. Nazareno Aff. ¶ 19.

Counterclaim ¶ 300.  At an unspecified time after the filing of the Complaint, GWG "subpoenaed" Levy and "made him feel like he was being accused of racketeering." *Id.*  According to Counterclaimant, Plaintiff acted solely to oust Nazareno and others as shareholders as PSC so that GWG could takeover PSC's "technologically cutting-edge merchant cash advance business." *Id.* ¶ 302.  Moreover, Plaintiff's RICO claims were "flimsy," "frivolous" and "baseless" and motivated to "financially bleed" Counterclaimant and the other defendants in this action. *Id.* ¶¶ 288, 287.  Nazareno also asserts that the Receiver "ran [PSC] into the ground" and sold PSC's assets to GWG for pennies on the dollar, further interfering with Counterclaimant's ability to sell PSC.  Nazareno Aff. ¶ 20, n. 1.

On August 24, 2021 and November 18, 2021, Nulook, Mannino, Guzzetti and Nazareno moved for summary judgment as to Plaintiff's remaining causes of action against them.  *See* DEs [299], [302].  On March 15, 2022, the Court granted the motions in part and denied them in part, dismissing the Fourth Amended Complaint against Mannino and Guzzetti with prejudice.  *See* Memorandum and Order, DE [304].  As a result, only Plaintiff's breach of contract claim against Nulook and its conversion claim against Nazareno based on his post-receivership actions remained for trial.  *See id.*

On May 21, 2023, Nazareno moved to strike the Fourth Amended Complaint as to the remaining cause of action against him and to strike GWG's answer to his Counterclaim.  *See* DE [330].  Following a hearing, this Court granted Counterclaimant's application in full and directed Nazareno to request a certificate

of default as to his Counterclaim.  *See* DE [332].  Counterclaimant requested a certificate of default on August 2, 2023, which the Clerk of Court issued on August 3, 2023.  *See* DEs [333] – [334].  On February 29, 2024, Nazareno's Motion was filed. *See* Nazareno Mot.  Counterclaimant seeks $4,350,000 in damages, plus his costs and expenses associated with defending this action, including reasonable attorneys' fees. *See* Counterclaim ¶ 304.  For the reasons set forth below, Nazareno's Motion is denied, and the Counterclaim is dismissed with prejudice.

## II.    LEGAL STANDARD

Motions for default judgment are governed by Fed. R. Civ. P. 55, which provides for a two-step process.  *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011).  Initially, the moving party must obtain a certificate of default from the Clerk of the Court.  *See* Fed. R. Civ. P. 55(a).  Once the certificate of default is issued, the moving party may apply for entry of a default judgment.  *See id.* at 55(b).  Under subsection (b)(1) of the rule, the Clerk of Court may enter a default judgment where the "claim is for a sum certain or a sum that can be made by computation" and the claimant submits an affidavit showing the amount due.  Fed. R. Civ. P. 55(b)(1).  In all other cases, pursuant to subsection (b)(2), the claimant must apply to the Court for a default judgment.  Fed. R. Civ. P. 55(b)(2).

Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true.  *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a

responsive pleading is required and the allegation is not denied.").  The entry of a default judgment, however, is "entrusted to the sound judicial discretion of the court," and a party is not entitled to a default judgment as a matter of right.  *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013) (citation omitted).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).  In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief."  *Ferrera v. Tire Shop Ctr.*, No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015), *report and recommendation adopted*, No. 14-cv-4657, 2015 WL 3604078 (E.D.N.Y. Jun. 5, 2015) (internal quotation marks and citation omitted).  Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law."  *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).  Once liability has been established, "[t]he court must also determine the amount of damages, actual or statutory, that may be assessed."  *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010).

7

## III.   DISCUSSION

As noted above, Nazareno has abandoned his cause of action for malicious abuse of process and as a result, this claim is dismissed with prejudice.  Nazareno Mem., 1.  With respect to his second counterclaim, tortious interference with contract/business relations, Counterclaimant seeks a default judgment pursuant to Fed. R. Civ. P. 55(b)(2).  *See id.*[3]  Nazareno requests $4,350,000 in damages, plus his costs and expenses associated with defending this action, including reasonable attorneys' fees.  *See* Counterclaim ¶ 304.  The record reflects that the Clerk of Court issued a certificate of default against Plaintiff as to Nazareno's Counterclaim.  *See* DE [334].  As a result, the Court must determine whether the allegations set forth in the Counterclaim establish GWG's liability on Nazareno's tortious interference with contract/business relations claim.  For the reasons set forth below, Nazareno's Motion is denied, and the Counterclaim is dismissed with prejudice.

### A.   <u>Tortious Interference with Contract/Business Relations</u>

Counterclaimant seeks a default judgment on his second counterclaim – "tortious interference with contract/business relations."  *See* Nazareno Mem., 1. Under New York law, to establish a tortious interference with contract claim, a plaintiff must show: "(1) the existence of a contract between the plaintiff and a third

---

[3] Counterclaimant requests in the alternative that the Clerk of Court enter a default judgment against Plaintiff pursuant to Fed. R. Civ. P. 55(b)(1), arguing that Nazareno's affidavit establishes that his claim is for a sum certain.  Nazareno Mem., 3-4; *see* Fed. R. Civ. P. 55(b)(1).  This procedure, however, applies only to parties that have never appeared in the action, not to those that appear and then subsequently fail to participate in the proceedings.  *See* § 2683 Clerk's Entry of a Default Judgment, 10A FED. PRAC. & PROC. CIV. § 2683 (4th ed.) (citing *Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538, 541-42 (2d Cir. 1963)). Given that GWG has previously appeared in this action, Nazareno cannot obtain a default judgment from the Clerk of Court via Fed. R. Civ. P. 55(b)(1).  Rather, the Court will evaluate whether a default judgment is appropriate pursuant to subsection (b)(2).

party, (2) the defendant's knowledge of the contract, (3) the defendant's intentional inducement of the third party to breach or otherwise render performance impossible, and (4) damages to the plaintiff." *Anesthesia Assocs. of Mount Kisco, LLP v. N. Westchester Hosp. Ctr.*, 59 A.D.3d 473, 476, 873 N.Y.S.2d 679, 682 (2d Dep't 2009).[4] Here, there are no allegations that a contract existed between Nazareno and Levy, so any claim for tortious interference with contract fails as a matter of law.

To prevail on a claim for tortious interference with business relations, a party must prove:

> (1) that it had a business relationship with a third party; (2) that the defendant knew of that relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the defendant's interference caused injury to the relationship with the third party.

*106 N. Broadway, LLC v. Lawrence*, 189 A.D.3d 733, 741, 137 N.Y.S.3d 148, 157–58 (2d Dep't 2020).   Improper means "include physical violence, fraud or misrepresentations, civil suits and criminal prosecutions, and some degrees of economic pressure*." L. Offs. of Ira H. Leibowitz v. Landmark Ventures, Inc.*, 131

---

[4] Nazareno makes no argument as to which state's law should apply, and the only cases cited in his brief are New York federal cases. *See* Nazareno Mem., 1-5.  Where, as here, the parties do not raise choice-of-law as an issue, "it can be said that they have consented to the application of the forum state's law." *Mangual v. Pleas*, No. 02 CIV. 8311, 2005 WL 2179083, at *2, n.1 (S.D.N.Y. Sept. 8, 2005); *see Jin Young Chung v. Yoko Sano*, No. 10 CV 2301, 2011 WL 1303292, at *7 (E.D.N.Y. Feb. 25, 2011), *report and recommendation adopted sub nom. Jin Yung Chung v. Sano*, 2011 WL 1298891 (E.D.N.Y. Mar. 31, 2011) (finding New York law applies where plaintiff "has not taken any position" and the defendant defaulted).  Similarly, where the parties assume one state's law applies, "implied consent . . . is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (citations omitted); *see Henneberry v. Sumitomo Corp. of Am.*, No. 04-cv-2128, 2005 WL 991772, at *5, n. 3 (S.D.N.Y. Apr. 27, 2005) ("Where the parties so assume, the Court need not address choice of law *sua sponte*.").  Here, since Counterclaimant makes no choice-of-law argument but cites to New York cases, and Plaintiff offered no argument to the contrary by virtue of its default, the Court concludes that New York law shall be applied to this action.

A.D.3d 583, 586, 15 N.Y.S.3d 814, 818 (2d Dep't 2015). "As a general rule, the offending party's conduct must amount to a crime or an independent tort." *Id.* There is a "narrow" exception to this rule where the interfering party "engaged in conduct for the sole purpose of inflicting intentional harm." *Deaton v. Napoli*, No. 17-CV-4592, 2019 WL 4736722, at *8 (E.D.N.Y. Sept. 27, 2019) (applying New York law). Moreover, where the offending party's actions are motivated by economic self-interest, they cannot be characterized as solely malicious. *See Out of Box Promotions, LLC v. Koschitzki*, 55 A.D.3d 575, 577, 866 N.Y.S.2d 677, 680 (2d Dep't 2008). Further, "[c]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192, 818 N.E.2d 1100, 1104 (2004).

### B. **Nazareno's Counterclaim Fails as a Matter of Law**

Here, Counterclaimant has established that he had a business relationship with Levy, *i.e.,* Levy was negotiating to purchase PSC from Nazareno between Spring 2016 and March 2017. *See* Counterclaim ¶ 293. Counterclaimant asserts, however, that GWG interfered with that business relationship by filing the original complaint in this action, which caused Levy to discontinue his efforts to purchase PSC. *See id.* ¶¶ 295-98. This conduct – the filing of the lawsuit – was not directed at Levy, however, but rather at Nazareno and PSC. As noted above, courts have dismissed tortious interference with business relations claims where the actions complained of were not directed towards a third party. *See e.g., Carvel,* 3 N.Y.3d at 192, 785 N.Y.S.

at 364 (concluding that tortious interference claim failed where conduct was not directed at party with which plaintiff sought to have a relationship); *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 168 (S.D.N.Y. 1998) (same); *see Roelcke v. Zip Aviation, LLC*, No. 15-CV-6284 (DAB), 2019 WL 10856680, at *7 (S.D.N.Y. Jan. 8, 2019) (dismissing claim where there was no contact between offending party and the potential buyer of counterclaim-plaintiff's business).

The only conduct directed at Levy was Plaintiff's communication with Levy in connection with this litigation, including an email from GWG's counsel and a subpoena. *See* Levy Aff. ¶ 14; Counterclaim ¶ 300.   Counterclaimant has not established, however, that these actions were taken solely out of malice or via improper or illegal means.  Contacting a potential witness in pursuit of litigation is not a crime or tort, such that it amounts to improper means.  Moreover, Nazareno alleges that Plaintiff was in part motivated by economic self-interest in filing and prosecuting this action.  *See* Counterclaim ¶ 302 (stating Plaintiff sought to oust Nazareno as a shareholder of PSC so it could take over PSC's business).  Where the alleged interference was motivated even in part by economic self-interest, it cannot be characterized as solely malicious.  *See Out of Box Promotions,* 55 A.D.3d at 577, 866 N.Y.S.2d at 680; *Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co.*, 23 A.D.3d 162, 163, 803 N.Y.S.2d 512, 513 (1st Dep't 2005) (dismissing tortious interference with business relations claim where plaintiff failed to allege that conduct was motivated by malice beyond self-interest or economic considerations).  As a

result, Nazareno's counterclaim for tortious interference with business relations fails as a matter of law and must be rejected.

## IV.     CONCLUSION

For the reasons set forth above, Nazareno's Motion is denied, and the Counterclaim is dismissed with prejudice.

**SO ORDERED**

Dated:        Central Islip, New York
              August 14, 2024

                            /s/ Steven I. Locke
                            STEVEN I. LOCKE
                            United States Magistrate Judge